UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

RANDY RASKA,                      )
                                  )
            Plaintiff             )
                                  )
      v.                          )   CIVIL NO. 2-09-cv-147
                                  )
BOB EVANS FARMS, INC.,            )
                                  )
            Defendant             )

OPINION AND ORDER

This matter is before the court on the Motion for Summary

Judgment [DE 27] filed by the defendant, Bob Evans Farms, Inc.,

on May 31, 2011.  For the reasons set forth below, the motion is

**DENIED.**

Background

On April 14, 2008, Randy Raska slipped and fell in the men's

restroom at Bob Evans Restaurant in Michigan City, Indiana,

allegedly injuring his right shoulder rotator cuff.  (Mem. in

Supp. of MSJ pp. 8, 11)  After refusing an ambulance at the

restaurant, Raska's mother-in-law, Kay Wilson, drove Raska to the

emergency room at St. Anthony's Hospital in Michigan City.  (Dep.

of Randy Raska, p. 89)  A video arthroscopy performed on May 19,

2008, revealed a right rotator cuff tear, impingement syndrome of

the right shoulder, and intraarticular synovitis of the gleno-

humoral joint. (Auth. Med. Rec. p. 155)  A subacromial decompres-

sion anterior acromioplasty and open rotator cuff repair were performed.  (Auth. Med. Rec. p. 155)

On May 22, 2009, Raska filed a complaint against Bob Evans. Raska alleges that Bob Evans owed a duty to patrons to provide restroom facilities that were not dangerous due to wet floors. (Comp. p. 2) Specifically, Raska claims that Bob Evans was negligent in failing to maintain the restroom by not removing excess water from mopping, failing to warn of the dangerous conditions of the floor when Bob Evans knew or should have known that others could be injured, and failing to inspect the restroom at regular intervals to discover the hazardous conditions. (Comp. p. 2)

On January 26, 2011, Raska's attorneys withdrew from the case.  Raska has not obtained new counsel and has proceeded pro se.

On May 31, 2011, Bob Evans filed a Motion for Summary Judgment alleging that it owed no duty to Raska because the condition of the floor was open and obvious, and thus Raska should have protected himself.  (Mem. in Supp. of MSJ, pp. 15-16)  The Motion for Summary Judgment was filed with the required Timms Notice, warning Raska of the consequences of failing to respond.  Raska responded with a short, four paragraph affidavit swearing that he

did not see water on the floor when he entered the restroom and that he never stated anything to the contrary.

The circumstances surrounding Raska's fall on April 14, 2008, as portrayed by the Complaint are mostly in line with the evidence provided by the defendants in support of summary judgment. After finishing his meal, Raska went to the restroom, leaving his wife and mother-in-law at the table. (Raska Dep. p. 80; Mem. in Supp. of MSJ, p. 11) Raska entered the restroom, took three steps, and slipped and fell on "soapy water." (Raska Dep. pp. 83, 89) Raska testified that he fell down on his hip with his arm out to break his fall and that he heard a "popping sound" in his shoulder when he hit the floor. After yelling for help to no avail, Raska pulled himself up with his left hand, using the sink and the wall to guide him to the door. (Raska Dep. p. 83)

Wilson testified that Raska came up to her as she was paying the bill to tell her that he had fallen. (Dep. of Kay Wilson, pp. 21-22) Wilson explained that Raska's clothes were wet and that he looked injured. (Wilson Dep. pp. 20-21) Wilson testified that she then went to look in the men's restroom to see the condition of the floor. Wilson stated that the room was well-lit and that she could plainly see that the floor was covered in "sudsy bubbles." (Wilson Dep. p. 23) Raska similarly testified

that the lighting in the restroom had nothing to do with his injury and that the whole restroom floor appeared as though "somebody just opened the door and throwed a bucket of water in there." (Raska Dep. p. 91)

Willie Hicks was the Bob Evans dishwasher responsible for cleaning the restrooms at the time of the incident. Hicks testified that he only cleaned the restrooms at the end of the night before the restaurant closed. (Dep. of Willie Hicks, p. 7) Hicks stated that before he began cleaning the men's restroom on April 14, 2008, he put a caution sign warning patrons of the wet floor in between the men's and women's restroom so that it would be seen by anyone entering the restroom. (Hicks Dep. p. 15) Hicks would place a cleaning solution on the floor, use a large squeegee to move excess water into the drain, and then used a dry mop to absorb the rest of the water. (Hicks Dep. pp. 7-8) He also stated that it was the manager's duty to inspect the restrooms after they were cleaned. Raska entered the restroom as Hicks was on his way out. (Hicks Dep. p. 16) Scott Moore, area manager for Bob Evans at the time of the incident, testified that he believed the procedure as described by Hicks was standard for that restaurant. (Dep. of Scott Moore, p. 15) Moore also explained that there was no company procedure that explained how the restrooms were to be mopped. (Moore Dep. p. 11)

Kenneth Pepper, assistant manager at Bob Evans at the time of the incident, testified that after he was informed of the fall, he went to inspect the restroom. (Dep. of Kenneth Pepper, pp. 29-30) He stated that he saw the yellow caution sign warning patrons of wet floors propped against a table directly next to the men's restroom before he entered. (Pepper Dep. p. 30) He also stated that he did not see any water puddles on the restroom floor. (Pepper Dep. p. 29)

In contrast to Raska's testimony, Mary Bragg, who lives with Raska's brother and has known Raska for about 12 years, testified that Raska told her that he had thrown the water on the floor himself to get money from Bob Evans. (Dep. of Mary Bragg, p. 7) Bragg explained that Raska told her that he was used to "scamming people." Bragg also contended that this was not the first time that Raska had done something like this. (Bragg Dep. p. 7) She stated that there were fires in Ohio that he had started himself as well as a car accident where he backed into another vehicle to make it appear as though that vehicle had hit him. (Bragg Dep. p. 7)

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is

entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Stephens*, 569 F.3d at 786; *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. *Ashman v. Barrows,* 438 F.3d 781, 784 (7th Cir. 2006). Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. *Wheeler*, 539 F.3d at 634 (*citing* *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

6

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> ***Anderson***, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* ***Reeves v. Sanderson Plumbing Prods., Inc***., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); ***Celotex Corp***., 477 U.S. at 322-23, 106 S.Ct. at 2553; ***Stephens,*** 569 F.3d at 786; ***Argyropoulos v. City of Alton***, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); ***Springer v. Dur-flinger,*** 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

"As a pro se litigant, [a] [p]laintiff is permitted a more lenient standard with respect to her pleadings than that imposed on a practicing attorney." ***Cintron v. St. Gobain Abbrassives, Inc.***, 2004 WL 3142556, *1 (S.D. Ind. Nov. 18, 2004). Although the court recognizes that pro se litigants face special challenges that litigants represented by counsel do not, pro se litigants are not excused from following procedural rules simply because the "rules of procedure are based on the assumption that litigation is normally conducted by lawyers." ***Lee v. Wal-Mart Stores***, 1994 WL 899240, *1 (N.D. Ind. Apr. 12, 1994). The ***Lee*** court explained that

> [the court] ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel. As we have noted before, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."
>
> ***Lee***, 1994 WL 899240 at *1 (*quoting* ***Mohasco Corp. v. Silver***, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980))

A defendant filing a motion for summary judgment must warn a pro se plaintiff of the consequences of failing to respond to the motion. ***Timms v. Frank***, 953 F.2d 281, 285 (7th Cir. 1992). The notice must include a short statement informing the plaintiff that all factual assertions made by the defendant will be taken

as true should the plaintiff fail to respond. ***Timms***, 953 F.2d at 285. *See also*, Local Rule Appendix C, Notice to Pro Se Litigant. Bob Evans served a proper ***Timms*** notice to Raska on May 31, 2011. Pursuant to Local Rule 56.1(a), Raska had 30 days to respond. Raska filed a timely, but brief, response on June 24, 2011.

Because Raska filed a negligence claim against Bob Evans, there are several elements he must prove. The elements that a plaintiff must prove to succeed on a negligence claim in Indiana are (1) a duty owed to the plaintiff, (2) a breach of that duty by the defendant, and (3) the breach proximately caused the plaintiff's damages. ***Bond v. Walsh & Kelly, Inc.***, 869 N.E.2d 1264, 1266 (Ind. App. 2007) (*citing* ***Peters v. Foster***, 804 N.E.2d 736, 742 (Ind. 2004)). Breach of a duty and proximate cause issues are generally questions of fact. *See* ***Peters***, 804 N.E.2d at 743; ***King v. Northeast Security, Inc.***, 790 N.E.2d 474, 484 (Ind. 2003). The court may conclude as a matter of law that a breach of duty has occurred only where the facts are undisputed and lead to but a single inference or conclusion. ***King***, 790 N.E.2d at 484; ***Cullop v. State***, 821 N.E.2d 403, 407 (Ind. App. 2005); ***Oxley v. Lenn***, 819 N.E.2d 851, 856 (Ind. App. 2004).

"Generally, whether a duty exists is a question of law for the court to decide." ***Rhodes v. Wright***, 805 N.E.2d 382, 386 (Ind. 2004)(*citing* ***Hooks SuperX, Inc. v. McLaughlin***, 642 N.E.2d

514, 517 (Ind. 1994)).  "The question of whether a duty is owed in premises liability cases depends primarily upon whether the defendant was in control of the premises when the accident occurred."  ***Yates v. Johnson County Bd. of Commissioners***, 888 N.E.2d 842, 847 (Ind. App. 2008)(*citing **Beta Steel v. Rust***, 830 N.E.2d 62, 70 (Ind. App. 2005)).  Determining the existence of a duty may depend upon underlying facts that require resolution by a trier of fact.  ***Rhodes***, 805 N.E.2d at 386-87.

"The nature and extent of a landowner's duty to persons coming on the property is defined by the visitor's status as an invitee, a licensee, or a trespasser."  ***Harradon v. Schlamadinger***, 913 N.E.2d 297, 300 (Ind. App. 2009)(*citing **Rhoades v. Heritage Inv., LLC***, 839 N.E.2d 788, 791 (Ind. App. 2005)).  An invitee is owed the highest duty of care: "the duty to exercise reasonable care for the invitee's protection while he or she is on the premises."  ***Harradon***, 913 N.E.2d at 300-01.  The duty owed to a licensee is to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril, which includes the duty to warn a licensee of any latent or non-obvious danger on the premises of which the landowner has knowledge.  ***Yates***, 888 N.E.2d at 848.  A trespasser is owed merely the duty to refrain from wantonly or willfully injuring him after discovering his presence.  ***Yates***, 888 N.E.2d at 848-49.

*Yates* instructs with respect to the determination of the visitor's status:

> An invitee is a person who is invited to enter or to remain on another's land.  There are three categories of invitee:  the public invitee, the business visitor, and the social guest.  Licensees and trespassers are persons who enter the land of another for their own convenience, curiosity, or entertainment and take the premises as they find them.  Unlike trespassers, however, licensees have a privilege to enter or remain on the land by virtue of the landowner's or occupier's permission or sufferance.  In determining whether an individual is an invitee or a licensee, the distinction between the terms "invitation" and "permission" is critical.  (internal cites and quotes omitted).

> 888 N.E.2d at 849

The Second Restatement of Torts defines a public invitee as "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public" and a business visitor as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Restatement (Second) of Torts, §332(2)-(3)(1965).

A customer is generally an invitee on the business owner's property and is owed the highest degree of care.  *Burrell v. Meads*, 569 N.E.2d 637, 642 (Ind. 1991).  Indiana has adopted the Second Restatement of Torts, which explains the duty of care a business owner owes to an invitee:

11

A possessor of land is subject to liability
for physical harm caused to his invitees by a
condition on the land if, but only if, he

(a) knows or by the exercise of
reasonable care would discover the
condition, and should realize that
it involves an unreasonable risk of
harm to such invitees, and

(b) should expect that they will
not discover or realize the danger,
or will fail to protect themselves
against it, and

(c) fails to exercise reasonable
care to protect them against the
danger.

Restatement (Second) of Torts §343

*See also* **Robinson v. Wal-Mart Stores East, LP**, 2009 WL 127029, *4
(S.D. Ind. 2009) (Although a business owner is not an insurer of
safety, he owes patrons a duty to exercise reasonable care and
survey his property for defects and dangerous conditions).  The
plaintiff carries the burden of proving each of these elements
against the business owner.  **Hi-Speed Auto Wash, Inc. v. Simeri,**
346 N.E.2d 607, 608 (Ind. App. 1976); **Robinson**, 2009 WL 127029 at
*4.

Raska was a customer at Bob Evans and therefore was owed the
highest duty of care.  It is unclear whether Bob Evans knew or
should have known of an unreasonably unsafe condition on its
restroom floor because the record is littered with contradictory
evidence concerning the condition of the floor.  The Bob Evans

manager stated that the floor was clean and dry at the time he
checked.  The Bob Evans dishwasher responsible for cleaning the
restroom floor testified that he pushed the excess water into the
drain and then exited the restroom.  Raska immediately entered
the restroom and testified that there was standing water on the
floor.  Wilson confirmed that there was water and "sudsy" bubbles
on the floor immediately following Raska's fall.[1] Therefore, the
true condition of the floor at the time Raska entered remains in
controversy.

Assuming the condition of the floor was unreasonably unsafe,
the dishwasher who created the condition and exited the restroom
immediately preceding Raska's entrance had the opportunity to
observe and remedy the potentially hazardous condition.  The
business proprietor is charged with the actual knowledge of
dangerous conditions created by or known to his employees.  *See
Wal-Mart Stores, Inc. v. Blaylock*, 591 N.E.2d 624, 627-28 (Ind.
App. 1992)(explaining that a business proprietor is charged with
the actual knowledge of dangerous conditions created by his
employees); *Kroger Co. v. Ward*, 267 N.E.2d 189, 192 (Ind. App.
1971) (explaining that the store was charged with the knowledge
of a dangerous condition the store manager was aware of). If the

---

[1]Raska submitted an affidavit attempting to retract this statement.  For
the reasons set forth below, the court will not consider this statement in
Raska's affidavit.

dishwasher created the wet and slippery floor, his conduct and knowledge is attributed to Bob Evans. In light of the contradictory evidence, an issue of fact necessary to determine whether the condition of the floor was unreasonably unsafe remains pending.

Bob Evans focuses its argument on the second prong of the analysis, whether it should have expected that an invitee would not discover or realize the danger, or would fail to protect himself against it. Although this is an objective standard, focusing on whether a reasonable person would realize and protect himself from the danger, Bob Evans addresses this argument by citing to Raska's acknowledgment that the alleged hazard was in plain view on the bathroom floor. *Smith v. Baxter*, 796 N.E.2d 242, 244 (Ind. 2003)(explaining that the court must apply an objective standard when assessing the landowner's duty); *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind. 1990) (same). Raska's personal knowledge of the floor's condition is not relevant to determining whether a duty was owed. "What ceases once the invitee has knowledge that the premises are unsafe is not the duty of the invitor, but the invitee's right to assume that the invitor has carried out his duty to use due care." *Douglass*, 549 N.E.2d at 370. Raska's acknowledgment of the condition more accurately bears on whether the duty was breached and whether the landowner

14

can raise the affirmative defenses of incurred risk and compara-
tive fault. *See Douglass*, 549 N.E.2d at 370; ***Get-N-Go, Inc. v.
Markins***, 550 N.E.2d 748, 751 (Ind. 1990) ("The knowledge of a
plaintiff in a negligence action will have a bearing on some
affirmative defenses relied upon by a defendant, most prominently
incurred risk, and often contributory negligence."). Affirmative
defenses do not excuse the landowner's duty to exercise reason-
able care. ***Get-N-Go, Inc.,*** 550 N.E.2d at 751.

To determine whether Bob Evans owed Raska a duty, under the
second prong the court must consider whether the perceived danger
was so obvious that a reasonable person would have recognized it
and protected himself against it. Common examples of open and
obvious conditions that people are expected to appreciate and
avoid, relieving the land owner of any duty, include fire,
height, and bodies of water. ***Ward v. Mid-American Energy Co.***,
729 N.E.2d 861, 863 (Ill. App. 2000).

In light of the contradicting evidence, it is impossible for
the court to determine the precise condition of the floor and
engage in this analysis. Without knowing the condition of the
floor, the court cannot determine that as a matter of law the
floor was so wet that a reasonable person would have noticed and
avoided the risk. *See **Bridgewater v. Economy Engineering Co.***,
486 N.E.2d 484, 488-89 (Ind. 1985)(explaining when a question of

fact remains concerning whether the defect was concealed or hidden, the court should reserve the question of the obviousness of the danger for the jury).  In any case, the degree of risk created by the wet floor does not appear to rise to the level of threats commonly accepted as open and obvious, relieving the landowner of any duty.  *See Ward*, 729 N.E.2d at 863 (explaining common examples of open and obvious dangers).  *See also,* Louis Lehr, 3 *Premises Liability 3d* §49:15 (2010) ("Except when a slippery floor area is open and obvious, as in the case of a 20-foot-square pool of water, an invitee is not negligent as a matter of law in failing to observe water or spilled liquid on the floor.").

Moving to the third prong of the analysis, when a landowner becomes aware of a latent defect, he either may remedy the defect or warn invitees of its risk so the invitee may avoid it.  ***Douglass***, 549 N.E.2d at 370; ***Howard v. H.J. Ricks Const. Co., Inc.,*** 509 N.E.2d 201, 205-06 (Ind. App. 1987)***; Louisville Cement Co. v. Mumaw***, 448 N.E.2d 1219, 1221 (Ind. App. 1983)(disapproved on other grounds)(*citing **Downham v. Wagner***, 408 N.E.2d 606, 610 (Ind. App. 1980); 62 Am.Jur.2d *Premises Liability* §66 (1972)).

Because the condition of the floor at the time of Raska's fall is unclear, the court is unable to determine whether Bob Evans remedied the defect by drying the floor prior to Raska's

fall.  However, Bob Evans has presented evidence that it warned
patrons of the risk, and asks to be relieved of liability on this
ground.  In his deposition, Hicks testified that he posted a wet
floor sign in between the men's and women's restroom.  Pepper
observed the sign leaning against a table between the two rest-
rooms when he went to check on the state of the floor after
Raska's fall. Raska's deposition contradicts this evidence.
Raska stated that "All I seen was ladies' room and men's room,
and I went to the men's room.  I didn't see nothing else." (Raska
Dep. p. 83) Raska does not acknowledge seeing a warning sign
outside the restroom door, and Pepper's testimony of the place-
ment of the sign calls into question the visibility and obvious-
ness of the warning.  It is not clear whether Bob Evans satisfied
its duty to warn patrons of the risk.

Bob Evans argues that Raska's knowledge of the condition
served as a warning.  When determining whether the possessor
breached its duty of reasonable care, "[t]he comparative knowl-
edge of a possessor of land and an invitee regarding known or
obvious dangers may properly be taken into consideration". *Smith,*
796 N.E.2d at 245.  When it is clear that the plaintiff had
knowledge of the risk, the court must determine whether the
defendant should have expected that the plaintiff would fail to
protect himself against the known risk or whether the defendant

should have anticipated the harm despite the plaintiff's knowledge of the obvious risk. ***Smith***, 796 N.E.2d at 245.

Assuming that Raska observed water on the floor before he proceeded to enter the bathroom, a statement Raska cannot now contradict with a self-serving affidavit[2], it remains questionable whether Bob Evans was reasonable in assuming that its patrons would protect themselves against the perceived danger or whether Bob Evans should have anticipated the injury. Sometimes nature calls abruptly, and the record does not reflect that Raska could have used an alternative restroom. Therefore, it may have been unreasonable for Bob Evans to believe its patrons would protect themselves from the wet floor and not enter the restroom despite their awareness of the obvious danger. Bob Evans may have been comparatively negligent for failing to dry the floor adequately before making it available for its patrons' use. The question of comparative fault is best reserved for the jury. ***Paragon Family Restaurant v. Bartolini***, 799 N.E.2d 1048, 1056

_____

[2] A party resisting summary judgment may not "patch-up potentially damaging deposition testimony with a contradictory affidavit." ***Commercial Underwriters Insurance Company v. Aires Environmental Services, Ltd.***, 259 F.3d 792, 799 (7th Cir. 2001). *See also* ***Buckner v. Sam's Club, Inc.***, 75 F.3d 290, 292 (7th Cir. 1996) ("[T]he law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict deposition or sworn testimony."). Raska's affidavit gives the impression that he was hoping to defeat the Motion for Summary Judgment by stating a plain contradiction of Bob Evans' main argument to create a genuine issue of material fact even though he could not substantiate the claim. As a result, Raska's affidavit cannot be given consideration.

(Ind. 2003) ("Under the Indiana Comparative Fault Act, the jury considers 'the fault of all persons who caused or contributed to cause the alleged injury.'").

Bob Evans further contends that Raska's contributory negligence precludes recovery. Indiana has moved away from the doctrine of contributory negligence and has adopted comparative fault. *See Smith*, 796 N.E.2d at 244-45 (explaining differences in application of contributory and comparative fault). The plaintiff no longer is stripped of his right to pursue damages because of his own negligence. *See Thompson v. Town of Ft. Branch,* 178 N.E. 440, 445 (Ind. 1931) (explaining that "the plaintiff should prevail on the issue of contributory negligence, unless it appears by a preponderance of the evidence that the plaintiff was negligent and that his negligence contributed to his own injury."). Rather, the trier of fact must allocate fault and determine whether the plaintiff's negligence exceeds that of the defendant. Ind. Code §34-51-2-6; *Paragon Family Restaurant*, 799 N.E.2d at 1056. The allocation of fault must be reserved for the jury unless the plaintiff's fault so clearly exceeds that of the defendant that no reasonable jury could find in his favor. *See* Ind. Code §34-51-2-6; *Hampton v. Moistner*, 654 N.E.2d 1191, 1195 (Ind. App. 1995) (explaining that the apportionment of fault may become an issue of law for the court when there is no dispute

in the evidence and the factfinder is able to come to only one logical conclusion).

Bob Evans has not shown that Raska's negligence exceeds its own and precludes recovery. Although the court questions the credibility of Raska's account of the events, the court must assess the record as a whole and avoid making credibility determinations on summary judgment. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."). The evidence presented shows that Raska chose to enter the restroom although he observed that the floor was wet. However, his decision to proceed was not necessarily negligent. Raska needed to use the restroom and a jury may find that, given the lack of alternatives, he proceeded as any reasonable person would. A jury is better fit to assess the reasonableness of Raska's actions and to allocate fault accordingly. The evidence presented calls into doubt the reasonableness of both Raska's and Bob Evans' conduct.

————————————

Based on the foregoing reasons, the Motion for Summary Judgment [DE 27] filed by the defendant, Bob Evans Farms, Inc., on May 31, 2011, is **DENIED**.

ENTERED this 4th day of October, 2011


                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge